FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MEREDITH ODEN,<br>　　　*Plaintiff-Appellant,*<br>v.<br>NORTHERN MARIANAS COLLEGE;<br>AGNES MCPHETRES; JOHN DOES,<br>1-V; BRUNO DALLA POZZA;<br>BOARD OF REGENTS,<br>　　　*Defendants-Appellees.* | No. 00-16594<br>D.C. No.<br>CV-98-00020-ARM |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Alex R. Munson, Chief Judge, Presiding

| | |
|---|---|
| MEREDITH ODEN,<br>　　　*Plaintiff-Appellant,*<br>v.<br>NORTHERN MARIANAS COLLEGE,<br>　　　*Defendant-Appellee.* | No. 03-16802<br>D.C. No.<br>CV-01-00032-GA<br>OPINION |

Appeal from the Supreme Court
of the Commonwealth of the Northern Mariana Islands
Demapan, Chief Justice, and Castro and Manglona,
Justices, Presiding

Argued November 1, 2004;
Resubmitted February 8, 2006
Honolulu, Hawaii

Filed March 6, 2006

2189

Before: Melvin Brunetti, Susan P. Graber, and Jay S. Bybee, Circuit Judges.

Opinion by Judge Graber

## SUMMARY

### Individual Rights/Sexual Discrimination

The court of appeals affirmed a judgment of the district court in part and dismissed in part. The court held that the Ninth Circuit's jurisdiction over appeals from the Supreme Court of the Commonwealth of the Northern Mariana Islands (CNMI) extends only to appeals that were completed before May 1, 2004.

Appellant Meredith Oden filed a complaint in district court in the CNMI against appellees including the Northern Marianas College, its president, Agnes McPhetres, and a teacher, Bruno Dalla Pozza, who allegedly sexually harassed Oden, raising both federal and nonfederal claims. Evidence showed that the college began to act as soon as it became aware of Oden's sexual harassment claims. Counselors were assigned to Oden to provide psychological and practical support; they met with her more than a dozen times; they assisted her in filing a formal complaint; and they helped her drop Dalla Pozza's class immediately. After the complaint was filed, the college served it on Dalla Pozza. He was instructed not to have any contact with Oden. After a nine-month delay, which contravened the college's 30-day policy, a hearing took place, Oden was believed, and Dalla Pozza was significantly disciplined. The hearing delay was due in part to the college's understanding that Oden was looking for a lawyer to represent her, and in part on her move to New Mexico. The district court entered summary judgment in favor of the college and McPhetres, and dismissed all the supplemental nonfederal

claims against those parties without prejudice. Oden proceeded to trial against Dalla Pozza, and the jury awarded her both general and punitive damages.

Oden appealed to the court of appeals, contending that the college reacted with deliberate indifference to her allegations of sexual harassment by delaying her hearing for several months. She also brought suit against the college in the CNMI Superior Court, asserting local-law claims arising from the sexual harassment to which Dalla Pozza had subjected her. The CNMI Superior Court dismissed the claims on the ground that the local statute of limitations had run. Oden appealed to the CNMI Supreme Court, which affirmed. Oden also appealed this decision to the court of appeals before May 1, 2004.

[1] The Supreme Court has held that damages are available under Title IX only if an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond. [2] McPhetres had authority to take corrective measures.

[3] Although the college's delay contravened its policy, the record failed to demonstrate that the delay was more than negligent, lazy, or careless. The college relied in part on its understanding that Oden was looking for a lawyer to represent her and on her move to New Mexico. There is no evidence in the record that the delay prejudiced Oden. The record did not permit an inference that the delay was a deliberate attempt to sabotage Oden's complaint or its orderly resolution. [4] An aggrieved party is not entitled to the precise remedy that he or she would prefer. Dalla Pozza was punished significantly for his improper actions. The college's response sufficed to avoid violation of Title IX. [5] It had to be held that the district court properly granted summary judgment in favor of the college on Oden's Title IX claim.

[6] The Ninth Circuit's jurisdiction over appeals from the CNMI Supreme Court expired on May 1, 2004. The question was whether its jurisdiction extended to all appeals filed before May 1, 2004, or only to appeals that were completed before May 1, 2004. In light of the Ninth Circuit's recent decision in another case, the court of appeals adopted the latter interpretation. [7] In the other case, the Ninth Circuit concluded that, because Congress repealed Guam's jurisdictional statute without including an explicit savings clause allowing us to hear pending appeals, it lacked the power to hear or to decide the case. [8] The court of appeals saw no principled distinction between Congress' repeal of that jurisdiction-providing statute and the natural expiration of a jurisdiction-providing statute, such as the one at issue here. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case. Oden's appeal from the CNMI Supreme Court had to be dismissed for lack of jurisdiction.

## COUNSEL

Douglas F. Cushnie, Saipan, MP, for the plaintiff-appellant.

Tred R. Eyerly, Honolulu, Hawaii, and F. Matthew Smith, Law Offices of Vincente T. Salas, Saipan, MP, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

This is a consolidated appeal from two judgments in favor of Defendants Northern Marianas College, its Regents, and its President. The first appeal is from the District Court for the Northern Mariana Islands (No. 00-16594). In that appeal we

must determine whether the court's grant of summary judgment was proper on Plaintiff's claim that Defendants violated Title IX of the Civil Rights Act of 1972 by exhibiting deliberate indifference to the sexual harassment that she suffered at the hands of a College teacher. The second appeal is from a local court, the Supreme Court of the Commonwealth of the Northern Mariana Islands ("CNMI") (No. 03-16802). That appeal requires us to answer a preliminary jurisdictional question: whether, under 48 U.S.C. § 1824, we can consider appeals from a local CNMI court that were filed before, but remained pending after, May 1, 2004.

In the appeal from the district court (No. 00-16594), we conclude that summary judgment was proper because, on this record, no reasonable finder of fact could conclude that Defendants acted with deliberate indifference to Plaintiff's complaint of sexual harassment. In the appeal from the CNMI Supreme Court (No. 03-16802), we conclude that in light of our recent decision, *Santos v. Guam*, No. 03-70472, 2006 WL 118375 (9th Cir. Jan. 3, 2006), we lack jurisdiction to decide an appeal that was filed before, but remains pending after, May 1, 2004.

Accordingly, in No. 00-16594 we affirm the district court's summary judgment in favor of Defendants, and in No. 03-16802 we dismiss the appeal from the CNMI Supreme Court's decision.

## FACTUAL BACKGROUND

Plaintiff Meredith Oden enrolled in music classes at Northern Marianas College in January 1996. The hour-long classes were taught by Bruno Dalla Pozza, a friend of Plaintiff's father. Plaintiff received individual instruction from Dalla Pozza; no one else was present during her lessons. The lessons took place twice a week until Plaintiff stopped attending at the end of February 1996.

At first the interactions between teacher and pupil were innocuous. Dalla Pozza kissed Plaintiff on the cheek and gave her hugs. Plaintiff viewed that conduct as affectionate but not inappropriate, especially because early on it occurred in front of her father.

After Plaintiff began taking classes from Dalla Pozza, however, his behavior became increasingly inappropriate and disturbing to Plaintiff. He rubbed Plaintiff's back and then moved his hands downward to touch her buttocks. On a number of occasions he kissed her on the lips and forced his tongue into her mouth. During one session he touched her breasts and rubbed his body against hers. Dalla Pozza also talked with Plaintiff about sexual topics and commented about her body.

After about six weeks of attending music classes with Dalla Pozza, Plaintiff met with a college counselor, Susan Satur, and informed her of Dalla Pozza's actions. Soon thereafter Satur and another college counselor, Lynn Newport, met with Plaintiff and her father.

The President of the College, Agnes McPhetres, learned of Plaintiff's allegations at the very earliest—crediting Plaintiff's father—in February 1996. McPhetres responded by assigning Satur and Newport to act as advocates for Plaintiff. They helped her drop Dalla Pozza's class. They met with her at least 14 times to provide counseling. Satur helped her prepare a formal complaint charging Dalla Pozza with sexual harassment; Plaintiff filed it on March 8, 1996.

Two days after Plaintiff filed her complaint, the College's Director of Human Resources met with Dalla Pozza regarding the allegations. The Director specifically informed Dalla Pozza that he was not to contact, or attempt to contact, Plaintiff in any way.

Ten days after filing her complaint, Plaintiff received a letter from McPhetres stating that, in accordance with College

policy, Dalla Pozza had been given a copy of the complaint, and informing Plaintiff that he had denied the charges. Because of the denial, the College explained, Dalla Pozza could not be disciplined immediately. Plaintiff was told that she had 15 days within which to request a formal hearing. She did so, and the College began to form an investigative Committee on Sexual Harassment in accordance with its policy.

After filing the complaint, Plaintiff continued to attend other classes at the College. She encountered Dalla Pozza twice, on campus, while her harassment claim was pending.

On the first occasion, Plaintiff was near a College snack bar when she saw Dalla Pozza across the room, and they made eye contact. She then ducked into a nearby restroom and hid in a stall. A few minutes later, she heard Satur, who happened to be washing her hands in the restroom, say hello to Dalla Pozza. He had stepped into the doorway of the women's restroom, apparently having followed Plaintiff there.

On a separate occasion, Plaintiff passed Dalla Pozza while walking across campus. He made an unintelligible comment to her.

The College's Human Resources Manual requires that a hearing be convened within 30 days after the filing of a formal complaint; that 30-day period expired on April 7, 1996. Notwithstanding that policy, the College did not hold a formal hearing on Plaintiff's complaint until January 3, 1997. Shortly after the hearing, the College's Committee on Sexual Harassment issued a written decision stating that it agreed unanimously that Dalla Pozza was "guilty of sexual harassment toward" Plaintiff. The Committee recommended disciplinary action, short of dismissal. McPhetres accepted the recommendation. She suspended Dalla Pozza without pay for four weeks, denied him a raise for one year, prohibited him from engaging in one-on-one instruction for two years, put him on

probation for five years, and placed a letter of reprimand in his personnel file.

## PROCEDURAL HISTORY

In 1998, Plaintiff filed a complaint in federal district court against Dalla Pozza, the Secretary of Education of the United States, and the College, its Regents, and its President. Plaintiff raised both federal and nonfederal claims. The court dismissed the claims against the Secretary of Education, a ruling that Plaintiff has not challenged. Additionally, the court entered summary judgment in favor of the College, its Regents, and its President, and dismissed all the supplemental nonfederal claims against those parties without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (holding that a district court has discretion to decline to exercise supplemental jurisdiction over nonfederal claims if it has dismissed all claims over which it had original jurisdiction).

In 2000, Plaintiff proceeded to trial against Dalla Pozza. A jury awarded her both general and punitive damages.

Following the entry of judgment on the jury's verdict, Plaintiff proceeded along two tracks. First, she timely appealed to this court, challenging the district court's summary judgment against her. The Ninth Circuit heard the appeal and issued an opinion in *Oden v. Northern Marianas College*, 284 F.3d 1058 (9th Cir. 2002), *vacated*, 539 U.S. 924 (2003). When the Supreme Court vacated that opinion it remanded the case for reconsideration in light of *Nguyen v. United States*, 539 U.S. 69, 83 (2003), which held that only Article III judges may comprise a court of appeals panel. As in *Nguyen*, the *Oden* court had included an Article IV district judge from CNMI, sitting by designation. The case is now before the present panel, which consists entirely of Article III judges, on remand.

ODEN v. NORTHERN MARIANAS COLLEGE     2197

Meanwhile, in 2000, Plaintiff brought suit against the College in the CNMI Superior Court, asserting local-law claims arising from the sexual harassment to which Dalla Pozza had subjected her. The CNMI Superior Court dismissed the claims on the ground that the local two-year statute of limitations had run. Plaintiff appealed to the CNMI Supreme Court, which affirmed the dismissal of her claims. Plaintiff timely appealed to this court before May 1, 2004.

We have consolidated Plaintiff's appeal from the district court's summary judgment with her appeal from the CNMI Supreme Court.

## STANDARD OF REVIEW

We review de novo a grant of summary judgment. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). Likewise, we review de novo the interpretation of a federal statute. *Harper v. U.S. Seafoods LP*, 278 F.3d 971, 973 (9th Cir. 2002).

## DISCUSSION

A. *District Court's Summary Judgment Under Title IX*

Title IX provides that no person "shall, on the basis of sex, . . . be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). It is undisputed that the College receives federal financial assistance; the issue is whether, under the governing interpretation of Title IX, the record would permit a finding for Plaintiff when all evidence is construed in her favor.

[1] The Supreme Court, in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998), held that damages are available under Title IX only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf

has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." The Court expressly declined to impose liability on "principles of *respondeat superior* or constructive notice," instead demanding actual notice to an official of the defendant. *Id.* at 285; *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999) (reinforcing the holding of *Gebser*).

[2] McPhetres, President of the College, had authority to take corrective measures. She learned of Plaintiff's claims of sexual harassment against Dalla Pozza—according to Plaintiff's father—in February 1996. It is not disputed that she had prompt actual notice of the formal sexual harassment complaint, which was filed on March 8, 1996.

Plaintiff's main focus is on the second requirement of *Gebser*. She contends that the College reacted with deliberate indifference to her allegations of sexual harassment by delaying the formation of a committee and the commencement of a hearing for several months—indeed, until the following school year.

We must decide whether a reasonable fact-finder could conclude that the College's response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. In other words, we must decide whether, on this record, one could find that the College made "an official decision . . . not to remedy the violation." *Gebser*, 524 U.S. at 290.

The College began to act as soon as it became aware of Plaintiff's allegations. Two counselors were assigned to Plaintiff to provide psychological and practical support; they met with her more than a dozen times; they assisted her in filing a formal complaint; and they helped her drop Dalla Pozza's class immediately. After the complaint was filed, the College served it on Dalla Pozza. He was instructed not to have any contact with Plaintiff. Eventually a hearing took place, Plain-

ODEN v. NORTHERN MARIANAS COLLEGE　　2199

tiff was believed, and Dalla Pozza was significantly disciplined.

[3] Plaintiff rests her assertion of deliberate indifference first on a nine-month delay (April 1996 to January 1997) in convening a hearing. That delay contravenes College policy, because the Human Resources manual requires a hearing within 30 days after the filing of a formal complaint. Nonetheless the record fails to demonstrate that the delay was more than negligent, lazy, or careless. The College relied in part on its understanding that Plaintiff was looking for a lawyer to represent her and, later, in part on Plaintiff's move to New Mexico. Furthermore, there is no evidence in the record that the delay prejudiced Plaintiff. We need not and do not decide that a delay *never* can constitute deliberate indifference; we decide only that this record does not permit an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution.

[4] Additionally, Plaintiff quarrels with the College's decision not to fire Dalla Pozza. But, even viewing the facts in Plaintiff's favor, we cannot conclude that a factual issue remains with respect to deliberate indifference. An aggrieved party is not entitled to the precise remedy that he or she would prefer. Dalla Pozza was punished significantly for his improper actions. We need not and do not hold that a response that is inadequate *never* can amount to deliberate indifference; we hold only that the College's response in this case sufficed to avoid violation of Title IX.

[5] In summary, we hold that the district court properly granted summary judgment in favor of Defendants on Plaintiff's Title IX claim.

B. *Ninth Circuit Jurisdiction Over Cases From the CNMI Supreme Court*

The United States and the Northern Mariana Islands entered into an agreement establishing a "self-governing com-

monwealth for the Northern Mariana Islands within the American political system." 48 U.S.C. § 1801. The Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant") provided for a court system in which the Ninth Circuit was to review appeals from the highest court of the CNMI for a limited period:

> [F]or the first fifteen years following the establishment of an appellate court of the Northern Mariana Islands the United States court of appeals [for the Ninth Circuit] shall have jurisdiction of appeals from all final decisions of the highest court of the Northern Mariana Islands from which a decision could be had in all cases involving the Constitution, treaties, or laws of the United States . . . .

*Id.* § 1824; *see also id.* § 1801 (setting out entire Covenant). After the 15-year period expired, relations between the CNMI's judiciary and the federal judiciary would parallel relations between a state's judiciary and the federal judiciary. *Id.* § 1824. That is, appeals from the CNMI's highest court henceforth would be heard only by the Supreme Court of the United States. Marianas Political Status Commission, *Section by Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands* 37-38 (1975).

[6] The CNMI Supreme Court was established on May 2, 1989, 1 N. Mar. I. Code § 3001, so the Ninth Circuit's jurisdiction over appeals from that court expired on May 1, 2004. The question presented here is whether our jurisdiction extends to all appeals filed before May 1, 2004, or only to appeals that were completed before May 1, 2004. In light of our recent decision in *Santos*, we adopt the latter interpretation.

In *Santos*, we considered a similar question regarding our jurisdiction to hear appeals from the Supreme Court of Guam.

2006 WL 118375, at *1. As it did with the CNMI, Congress provided for Ninth Circuit review of appeals from the highest local court of Guam for a period of 15 years. 48 U.S.C. § 1424-2 (2000). Guam's highest court was created in 1992; accordingly, the 15-year provision would not have expired until 2007. H.R. Rep. No. 108-638, at 2 (2004), *reprinted in* 2005 U.S.C.C.A.N. 2208, 2209. But on October 30, 2004, Congress amended 48 U.S.C. § 1424-2 by excising the portion of the statute that allowed for Ninth Circuit review of final appeals from the local Guam appellate courts. Pub. L. No. 108-378, § 2, 118 Stat. 2206 (2004) (codified at 48 U.S.C. § 1424-2 (Supp. 2005)).

[7] In *Santos*, we concluded that, because Congress repealed Guam's jurisdictional statute without including an explicit savings clause allowing us to hear pending appeals, we lacked the power to hear or to decide the case. *Santos*, 2006 WL 118375, at *2. In *Santos, id.* at *1, we relied on the Supreme Court's admonition in *Bruner v. United States*, 343 U.S. 112, 116 (1952), that "when the jurisdiction of a cause depends upon a statute the repeal of the statute takes away the jurisdiction." (Internal quotation marks omitted.)

[8] We see no principled distinction between Congress' repeal of the jurisdiction-providing statute in *Santos* and the natural expiration of a jurisdiction-providing statute, such as the one at issue here. In both cases Congress gave us jurisdiction to hear local appeals for a limited period; in both cases Congress stripped us of the right to hear those appeals as of a date certain, without including a savings clause to allow us to decide pending cases. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the [case]." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

## CONCLUSION

In No. 00-16594, the appeal from the district court, we affirm the summary judgment in favor of the College, its

Regents, and its President. In No. 03-16802, we dismiss Plaintiff's appeal from the CNMI Supreme Court for lack of jurisdiction.

No. 00-16594 AFFIRMED, No. 03-16802 DISMISSED.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.